**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| THOMAS E. WHATLEY III, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CASE NO. 4:11-CV-00488 |
| | § | Judge Clark/Judge Mazzant |
| AHF FINANCIAL SERVICES, LLC, | § | |
| ALPHINE H. FREEMAN III, and | § | |
| X-RAY ASSOCIATES OF NEW | § | |
| MEXICO, P.C., | § | |
| | § | |
| *Defendants*. | § | |

### PLAINTIFF THOMAS E. WHATLEY'S RESPONSE TO DEFENDANT X-RAY ASSOCIATES OF NEW MEXICO, P.C.'S MOTION TO COMPEL DISCOVERY

Plaintiff, Thomas E. Whatley III ("Plaintiff"), submits his response to the motion to compel discovery filed by Defendant, X-Ray Associates of New Mexico, P.C. ("X-Ray").

**I.   INTRODUCTION.**

Plaintiff brings this action against X-Ray, AHF Financial Services, LLC ("AHF") and Alphine H. Freeman III ("Freeman"). X-Ray moves to compel better answers to its discovery requests. Nevertheless, Plaintiff has served amended discovery responses. Plaintiff's amended responses remove Plaintiff's general objections and fully respond to X-Ray's interrogatories related to the Texas Debt Collection Act ("TDCA") and documents no longer in Plaintiff's possession.

While X-Ray moves to compel better answers to its requests related to the Fair Debt Collection Practices Act ("FDCPA"), such requests are moot. The magistrate judge recommended that X-Ray's motion for judgment on the pleadings be partially granted, dismissing Plaintiff's FDCPA claims against X-Ray. Plaintiff does not intend to file any

1

objections to the report and recommendation. Thus, no FDCPA claims will remain against X-Ray once the Court adopts the report and recommendation.

Next, X-Ray cannot compel discovery related to Plaintiff's attorneys' fees. First, such documents are protected by the attorney-client privilege. Second, the requests are not reasonably calculated to lead to the discovery of admissible information because fee agreements and time records are not discoverable. Third, attorneys' fees do not become an issue until Plaintiff prevails. Fourth, X-Ray fails to present a current legitimate need for the documentation requested. Fifth, attorneys' fees are determined by using the lodestar method, not by any underlying fee agreement.

Similarly, X-Ray cannot compel production of Plaintiff's medical records. Plaintiff need not produce any medical records because his testimony alone is sufficient to support an award of actual damages. Further, Plaintiff's medical records are protected by the Texas physician-patient privilege.

Finally, Plaintiff need not supplement his response to X-Ray's requests for admission. These bear no relevance to Plaintiff's TDCA and Texas Deceptive Trade Practice Act ("DTPA") claims, because no factual dispute exists regarding the alleged debt. Notwithstanding, the Court has dismissed X-Ray's counterclaims to collect the alleged debt. Accordingly, X-Ray's motion must be denied.

## II. RELEVANT PROCEDURAL HISTORY.

Plaintiff filed his original complaint against AHF Financial Services, LLC ("AHF") and Alphine H. Freeman III ("Freeman") on August 4, 2011. (Doc. 1). On April 26, 2012, Plaintiff filed an amended complaint joining X-Ray as a defendant. (Doc. 17). On June 11, 2012, X-Ray filed its answer and counterclaims. (Doc. 21).

On July 2, 2012, Plaintiff moved to dismiss X-Ray's counterclaims. (Doc. 27). X-Ray filed its response on July 16, 2012, and Plaintiff filed his reply on July 26, 2012. (Doc. 29; Doc. 31). Despite X-Ray's objections, the Court adopted the Magistrate Judge's report and recommendation dismissing X-Ray's counterclaims on September 14, 2012. (Doc. 44).

On July 16, 2012, X-Ray moved for judgment on the pleadings. (Doc. 30). Plaintiff filed his response on August 2, 2012, Defendant filed its reply on August 8, 2012, and Plaintiff filed his sur-reply on August 17, 2012. (Doc. 32; Doc. 33; Doc. 36). On September 17, 2012, the Magistrate Judge issued a report and recommendation granting X-Ray's motion with respect to Plaintiff's FDCPA claims against X-Ray and denying the motion with respect to Plaintiff's state law claims. (Doc. 45). On October 1, 2012, X-Ray filed its objections to the report and recommendation. (Doc. 50).

On August 1, 2012, Plaintiff served his responses to X-Ray's discovery requests. (See Doc. 46-2). On September 24, 2012, the parties each moved for summary judgment. (Doc. 47; Doc. 48; Doc. 49). On October 2, 2012, Plaintiff served his amended responses to X-Ray's discovery requests. (See Amended Discovery Responses, attached hereto as Exhibit A).

## III. STANDARD OF REVIEW.

"A party may move to compel the disclosure of any materials or discovery response requested so long as such discovery is relevant and otherwise discoverable." *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010); *see* Fed. R. Civ. P. 37. Documents and information are discoverable only where they are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The moving party bears the burden of showing that the information sought is relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd., v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the request is within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Spiegelberg Mfg., Inc. v. Hancock*, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007). The non-moving party must show how each document request is overly broad, burdensome, or oppressive. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Further, Rule 26(b)(2)(C) provides:

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

**IV.    NO FDCPA CLAIMS REMAIN AGAINST X-RAY.**

X-Ray moves to compel responses to interrogatory numbers two through five. (Doc. 46 at 4). Each of these requests are specifically directed at X-Ray's violations of the FDCPA. (Doc. 46 at 4). However, on September 17, 2012, the Magistrate Judge recommended dismissal of Plaintiff's FDCPA claims against X-Ray. (See Doc. 45). As indicated in his amended

4

discovery responses, Plaintiff does not intend to file an objection to the Magistrate Judge's report and recommendation. (See Exhibit A). Thus, because no FDCPA claims remain as to X-Ray, X-Ray's interrogatory numbers two through five have no relevance to this action. Accordingly, X-Ray's motion to compel must be denied.

## V. PLAINTIFF'S FIRST AMENDED DISCOVERY RESPONSES DO NOT INCLUDE GENERAL OBJECTIONS.

On October 2, 2012, Plaintiff served his first amended discovery responses on X-Ray. (See Exhibit A). Plaintiff's first amended discovery responses do not include any general objections. (See Exhibit A). Thus, X-Ray's argument regarding Plaintiff's general objections is moot. Accordingly, X-Ray's motion must be denied.

## VI. INTERROGATORY NUMBER 12 IS OVERLY BROAD. NEVERTHELESS, PLAINTIFF ADEQUATELY RESPONDED.

X-Ray asserts that "[i]n Interrogatory 12 X-Ray request[s] descriptions of any produced items to other parties in this lawsuit which are no longer in Plaintiff's possession, custody, or control." (Doc. 46 at 7-8). However, Interrogatory number 12 is much broader in that it requests Plaintiff identify "all documents which you have been *requested* to produce in any request for production, propounded upon you in this case, which are no longer in your possession, custody, or control." (See Doc. 46 at 7) (emphasis added). X-Ray's request is not limited to identifiable documents that have been previously produced, but rather requests Plaintiff identify *any* document that may be responsive to *any* request for production propounded in this action—whether from X-Ray, AHF, or Freeman—which Plaintiff no longer possesses. (See Doc. 46 at 7). This request is overly broad on its face. *See Sarmiento v. Armour*, 2006 WL 539459, *1 (S.D. Tex. Mar. 3, 2006); *Freeport McMoran Sulpher, LLC v. Mike Mullen Energy Equip. Res., Inc.*, 2004 WL 595236, at *5 (E.D. La. Mar. 23, 2004).

5

Notably, X-Ray responds to Plaintiff's discovery requests in a similar fashion to the way it now objects to Plaintiff's responses. (See X-Ray's responses to discovery, attached hereto as Exhibit B). In response to Plaintiff's request for production number 5, X-Ray states: "Defendant objects to this request because it is vague, ambiguous, and overly broad. Defendant objects to the extent this response may seek records that contain anticipation of litigation information [sic], attorney work product and attorney client information." (Exhibit B at 15). Nevertheless, Plaintiff's amended response clarifies that "Plaintiff is without sufficient information to recall any documents which are no longer in his possession, custody, or control." (Exhibit A). Thus, Plaintiff has properly responded to Interrogatory number 12 and X-Ray's motion must be denied.

**VII. X-RAY CANNOT COMPEL PRODUCTION OF DOCUMENTS RELATED TO PLAINTIFF'S ATTORNEYS' FEES.**

X-Ray's requests for production numbers 16 and 21 each seek engagement letters, attorneys' fees, costs, and billing records. While X-Ray bases its argument on the unpublished opinion in *Coleman v. Credit Management, LP*, No. 3-10-CV-2312-M-BK (N.D. Tex. Jul. 13, 2011), that case solely discussed the production of fee related documents related to the FDCPA—of which Plaintiff asserts no remaining claims against X-Ray—and the plaintiff's sole argument was based upon the position that a determination on the amount of fees was premature.

X-Ray's stated basis for these requests is: "This information is relevant to Defendant so that he knows how much he could potentially owe." (Doc. 46, at p. 11). In *Venegas v. Mitchell*, 495 U.S. 82, 92 1679 (1990), the U.S. Supreme Court stated "In sum, "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." (emphasis added).

For example, in *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003) (emphasis added), the Court held that "[t]hee fees available under a fee-shifting statute are part of the plaintiffs recovery and are not dependent upon any explicit fee arrangements between the plaintiffs and their counsel." In *Sargeant v. Sharp,* 579 F.2d 645, 649 (1st Cir. 1978) (emphasis added) the Court stated that "a fee agreement is irrelevant to the issue of entitlement and should not enter into the determination of the amount of a reasonable fee." In *Sanderson v. Winner,* 507 F.2d 477, 480 (10th Cir. 1974) (granting mandamus), it was stated that "[n]either the court nor the defendant has legitimate concern as to the propriety of the [fee] arrangement under the code of responsibility"). In *Travelers Ins. Co. v. Davis,* 411 F.2d 244, 247-48 (5th Cir. 1969) the Court of Appeals held that "the amount assessed should never be based on a contingent contract, such as might exist between a claimant and his attorney, but should represent only a reasonable fee for services actually performed." Likewise, the Court in *Sandler v. McGraw-Edison Co.,* 92 F.R.D. 463, 464 (D.C. Ohio 1981), held, in a breach of contract case, that a fee agreement is not discoverable; that fact that plaintiff asked for attorney fees does not change the result, because the amount of attorneys fees to be awarded should be determined from the view of the trial judge, not from the view of the attorney and client." (Emphasis added). Even where attorney's fees are in issue because the action is a class action, their discovery seems to be disfavored. For example, *Stahler v. Jamesway Corp.,* 85 F.R.D. 85, 86 (E.D. Pa. 1979), a class action, stated that "we do not believe that the fee agreement between plaintiff and her counsel is discoverable."

Accordingly, courts routinely deny fee agreement discovery from a Plaintiff in a fee shifting case as outside the scope of discovery. *Piazza v. First Am. Title Ins. Co.,* 2007 U.S. Dist. LEXIS 89319, 4-5 (D. Conn. 2007); *McMillan v. Experian Information Serv. Inc.,* Civil No. 3:99CV1481 JBA (JGM) (D. Conn. Nov. 2000); *Young v. Citicorp Retail Services, Inc.,*

Civil No. 3:95CV 1504 (AHN) (HBF) (D. Conn. May 14, 1996); *Bishop v. National Account Systems, Inc.,* Civil No. 3:91CV132 (AHN) (TPS) (D. Conn. Jan. 6, 1992).

  A. **X-Ray's Requests Seek Privileged Documents.**

X-Ray's requests seek privileged documentation—documentation on either confidential communications between Plaintiff and his attorneys (engagement letters) and/or attorney work product (attorneys' fees, costs, billing records). *See S.E.C. v. Brady*, 238 F.R.D. 429, 438–39, 441 (N.D. Tex. 2006). The engagement letter contains legal advice, and as such is protected by the attorney-client privilege. *Id.* at 438–39 ("The attorney-client privilege protects . . . any communication from an attorney to his client when made in the course of giving legal advice.") The billing records and costs are prepared in anticipation of litigation and indicate Plaintiff's theory and strategy in litigating this matter, and as such are protected by the work product doctrine. *Id.* at 441 ("[P]rotection extends to documents . . . including a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements."). Accordingly, X-Ray's motion must be denied.

  B. **X-Ray's Requests Are Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

Courts deciding matters filed under the statutes on which Plaintiff bases his claims have held that attorneys' fee agreements and time records are not reasonably calculated to lead to the discovery of admissible evidence, and are not discoverable. *Abels v. JBC Legal Group, P.C.*, 233 F.R.D. at 647; *Bank v. Pentagroup Fin., LLC*, 2009 WL 1606420, at *5 n.6 (E.D.N.Y. June 9, 2009) (denying the defendant's request for an order permitting discovery relating to the plaintiff's attorneys' fee claim, and noting that "[s]ince fees are available only if the plaintiff prevails, and the defendant contests liability, such procedures would be premature."); *see also Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 126 (D. Conn. 1974) (motion to compel

fee agreement denied); *Stahler v. Jamesway Corp.*, 85 F.R.D. 85, 86 (E.D. Pa. 1979) (fee agreement not discoverable); *In re Nissan Motor Corp Antitrust Litigation*, 1975 WL 166141, at *2 (S.D. Fla. June 4, 1975). Because Plaintiff's attorneys' fee agreements and time records are not discoverable, X-Ray's motion must be denied.

   **C.** **Attorneys' Fees Incurred By Plaintiff Do Not Become An Issue Until he Prevails Under One Or More Of The Statutes On Which He Bases His Claims.**

Under the statutes upon which Plaintiff bases his claims, attorneys' fees do not become an issue until he prevails. Tex. Fin. Code § 392.403(b); Tex. Bus. & Com. Code § 17.50(d); *see also Husain v. General Motors*, 715 N.Y.S. 2d 394 (2000). Accordingly, documents sought bearing solely upon the issue of attorneys' fees are neither material nor necessary at an earlier stage of litigation. *Id*. That documents may prove helpful or even necessary in settlement considerations or negotiations does not render those documents material and necessary to other aspects of litigation. *Id*.; *Pizel v. Monaco Coach Corp.*, 224 F.R.D. 642, 644 (N.D. Ind. 2004) ("Simply stating that the agreement might aid in settlement discussions does not persuade this Court that the information sought is in fact relevant."); *see Abels*, 233 F.R.D. at 647 (denying a party's motion to compel the production of attorneys' fee records and a retainer agreement because the case had not progressed to the point at which attorneys' fees were an issue). Thus, X-Ray's motion must be denied.

   **D.** **X-Ray Fails To Present A Current Legitimate Need For The Documentation Requested.**

Courts typically order the production of attorneys' fee agreements and other confidential or sensitive information about the attorney-client relationship only where a party demonstrates a "legitimate need" for such disclosure. *U.S. v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir. 1977); *accord Mitchell-Tracey v. United Gen. Title Ins. Co.,* 2006 U.S. Dist. LEXIS 1308 at *3

(D. Md. Jan. 9, 2006) (denying a class action defendant's motion to compel plaintiff's fee agreement, and noting that review of case law reveals courts generally treat "billing agreements like tax returns, in that both documents are somewhat sensitive and are only circumstantially relevant.")

Other courts have similarly held that discovery regarding attorneys' fee arrangements is inappropriate. In *Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974), the Tenth Circuit issued a writ of mandamus and prohibition to the district court finding that discovery specific to the plaintiff's arrangements with counsel was a judicial "usurpation of power." The court stated, "[n]either the court nor the defendant has legitimate concern as to the propriety of the arrangement under the code of responsibility." *Id*. Another court found, "the fee-financial arrangements between the plaintiffs and counsel are also irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in accordance with Rule 26(b)(1), Federal Rules of Civil Procedure." *In re Nissan*, 1975 WL 166141 at *2. Accordingly, X-Ray's motion must be denied.

As the case law demonstrates, X-Ray's decision to settle out of court necessarily involves the making of an educated guess concerning the amount of damages and fees for which its conduct may cause it to become liable; *that* is the yardstick by which X-Ray must measure any proposed settlement offer. Because attorneys' fee awards are determined according to the "reasonable attorney's fee" standard, and not in any way by any information contained in the agreement between a plaintiff and their counsel, such agreement is immaterial in all respects.

That is to say, even if this Court were to grant X-Ray's motion and allow unbridled access to each and every piece of confidential and private information requested, in light of the law on determining reasonable attorney's fees, X-Ray would be in no better position to evaluate

their position than they are right now. In other words, absent some binding stipulation that X-Ray shall not contest the reasonableness of Mr. Whatley's attorneys' fees, at this stage X-Ray's request imposes a significant burden on one hand, without providing any material benefit on the other.

      E.    **Notwithstanding, Reasonable Attorneys' Fees Are Not Necessarily Determined By An Underlying Fee Agreement.**

"In evaluating a fee award, a court determines the amount of attorney's fees to which a prevailing party is entitled through a two-step process." *Santana v. First Am. Solutions, LLC*, EP-11-CV-186-PRM, 2011 WL 3666591 (W.D. Tex. June 27, 2011) (FDCPA case) (citing *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir.2000)). "First, the court calculates the 'lodestar' by multiplying the reasonable amount of hours spent on the case by the reasonable hourly rate. A reasonable rate for attorney's fees awarded under § 1692k(a)(3) is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984). "Second, the court considers whether the lodestar amount should be adjusted upwards or downwards based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)." *Id.*; *see Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998). Reasonableness is shown through evidence offered in declarations or opinion evidence of rates actually billed and paid by plaintiff's counsel, rates charged by lawyers in similar lawsuits, and the relative skill of the attorney involved. *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11, (1984).

"The Supreme Court has held that there is a 'strong presumption' that the lodestar figure, without adjustment, is the reasonable fee award." *Memon v. Pinnacle Credit Services, LLC*, 2009 WL 6825243, at *2 (S.D. Tex. May 21, 2009) (citing *City of Burlington v. Dague,* 505 U.S. 557, 562, (1992). Thus, because the lodestar figure—rather than any underlying fee

11

agreement—controls any award of attorneys' fees, the agreement between Plaintiff and his counsel bears no relevance to this action. As such, X-Ray's motion must be denied.

**VIII. PLAINTIFF NEED NOT DISCLOSE HIS MEDICAL RECORDS.**

X-Ray seeks "copies of all documents in [Plaintiff's] possession from all present and former doctors seen within the last five (5) years." (Doc. 46 at 11). Plaintiff need not produce any medicals to support his claim for actual damages because his testimony alone is sufficient. Further, Plaintiff's medical records are protected by the Texas physician-patient privilege.

**A. Plaintiff's Testimony Alone Is Sufficient To Establish Actual Damages.**

A plaintiff suing under the TDCA may recover damages for mental anguish based solely on testimony. *See Vanderbilt Mortg. and Finance, Inc. v. Flores*, 746 F. Supp. 2d 819, 845 (S.D. Tex. 2010); *see also Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986) (holding that damages for "serious upset" and "strain of overall situation" are recoverable under the TDCA); *Green Tree Financial Corp. v. Garcia*, 988 S.W.2d 776, 784-85 (Tex. App.—San Antonio 1999, no pet.) (holding damages for loss to character and reputation recoverable in unfair debt collection action brought under TDCA and DTPA).

Notably, X-Ray fails to cite case law applying the standard for recovering actual damages for emotional distress in TDCA cases. Texas courts have "expressly ruled that an action for unreasonable debt collection efforts may be maintained absent a plea of physical illness or injury." *Campbell v. Beneficial Finance Co. of Dallas*, 616 S.W.2d 373, 375 (Tex. App.—Texarkana 1981, no wirt). As one early Texas Court of Appeals decision explained:

> It is urged that the actual damage award was not supported by evidence because damages for mental anguish cannot be recovered unless there is also physical illness or injury. **As to common law torts, that has been the general rule in Texas for many years. But we are dealing with a new statutory tort where the statutes expressly give a right of action for oppression, harassment or abuse resulting from certain prohibited**

12

> **practices.** Moreover, the decisions now recognize a right of action for mental anguish alone when the injury is essentially mental and subjective or where the injury is an unpermitted and intentional invasion of a personal right.

*Ledisco Financial Services, Inc. v. Viracola*, 533 S.W.2d 951, 957 (Tex. App.—Texarkana 1976, no writ) (emphasis added) (citing *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973) and *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1967)).

This rule continues to be good law today, as the Southern District of Texas recognized:

> In his deposition testimony, Flores states that because he had to continue to pay his debt to Vanderbilt when it had been released, this put stress on him and his family. [] King states that as a result of the legal proceedings instituted by Vanderbilt against him he suffers "constant worry." [] Counter–Plaintiffs have presented no other evidence to support their allegations that they have suffered mental anguish as a result of Vanderbilt's collection efforts. However, statements of the afflicted party can in some cases be sufficient to support claims for mental anguish damages. *See South Tex. Freightliner, Inc. v. Muniz*, 288 S.W.3d 123, 135 (Tex.App.2009) (upholding jury verdict on the issue of mental anguish damages in a malicious prosecution case when the only evidence of mental anguish was plaintiff's statements to his attorney that attending trial made him sad and angry, finding that this sufficed to provide "direct evidence of the 'nature, duration, or severity' " of plaintiff's mental anguish) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995)).
>
> In addition, Texas courts have recognized a more lenient standard of proof may apply to claims for mental anguish in unfair debt collection cases.

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 746 F. Supp. 2d 819, 845 (S.D. Tex. 2010) (citing *Campbell*, 616 S.W.2d at 375; and *Ledisco Financial Services, Inc.*, 533 S.W.2d at 957).[1]

---

[1] *See also State Farm Mut. Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 600-01 (Tex. App.-El Paso 1991, writ denied) (evidence that plaintiffs felt intimidated, confused, frightened, "betrayed, scared, angry and devastated" and were "unable to sleep" sufficient to prove mental anguish); *Skaggs Alpha Beta, Inc. v. Nabhan,* 808 S.W.2d 198, 202 (Tex. App.-El Paso 1991, no writ) (plaintiff's descriptive testimony that she suffered chronic headaches which affected her domestic environment and had trouble sleeping was sufficient proof of damages); *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 43 (Tex. App.-Houston [1st Dist.] 1990, no writ) (evidence that plaintiffs experienced "a tremendous amount of mental anguish, embarrassment, and distress" was legally and factually sufficient to support award for mental anguish); *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 460 (Tex. App.-

Plaintiff need not produce any medical records to support his claim for actual damages because his testimony alone is sufficient. Because Plaintiff is not going to use medical records or medical testimony at trial in order to prove up the claims for mental anguish, then no reason exists for disclosure of his medical records. *Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376, 384 (E.D. Tex. 1997) (citing *Farpella–Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996)). "Without showing that the mental condition of a plaintiff is somehow at the crux of the case, records reflecting the mental condition are not relevant so as to fall under mandatory disclosure of Rule 26(a)(1)(B)." Accordingly, X-Ray's motion must be denied.

### B. Plaintiff's Medical Records Are Protected By The Texas Physician-Patient Privilege.

When considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence and scope of a privilege. *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). There is no doctor-patient privilege under federal law. *U.S. v. Moore*, 970 F.2d 48 (5th Cir. 1992). However, the federal courts may consider state policies supporting a privilege in weighing the patient's interest in confidentiality. *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). Further, Plaintiff's remaining claims against X-Ray arise under state law, the TDCA and DTPA. (See Doc. 17; Doc. 45). Rule 509 of the Texas Rules of Evidence recognizes the physician-patient privilege. The Western District of Texas discussed the Rule, stating:

> Under Texas law confidential communications between physician and patient, relative to or in connection with any professional services are privileged and may not be disclosed. Additionally, records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician

---

Austin 1989, writ denied) (testimony that plaintiff, among other things, was in "total panic" and "great fear," was "nervous and irritable," and would "bite his nails" and "pace the floor" was legally and factually sufficient to support award for mental anguish).

14

> are confidential and privileged and may not be disclosed. In balancing the interests of patients or employee/patients in the confidentiality of their medical records against the interest of the plaintiff in obtaining these records, the patients prevail.

*Wilson v. Martin County Hosp. Dist.*, 149 F.R.D. 553, 555-56 (W.D. Tex. 1993).

To waive the physician-patient privilege, a plaintiff must rely upon his mental condition as part of the claim or defense. Tex. R. Evid. 509(e)(4), 510(d)(5). "Thus, the question becomes whether Plaintiff here has made [his] mental condition part of [his] claims." *Jackson v. U.S. Kids Golf, LLC*, 2008 WL 2078777, at *1 (E.D. Tex. May 15, 2008). Routine allegations of mental anguish or emotional distress—as asserted here—do not place the party's mental condition in controversy. *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988). To waive the privilege, "[t]he plaintiff must assert mental injury that exceeds the common emotional reaction to an injury or loss." *Id.* Because Plaintiff is not going to use medical records prove mental anguish, Plaintiff's medical records are neither relevant nor discoverable. *Burrell*, 177 F.R.D. at 384 (citing *Farpella–Crosby*, 97 F.3d at 809). Accordingly, X-Ray's motion must be denied.

**IX.     X-RAY'S REQUESTS FOR ADMISSION NUMBERS 14, 31, 33, 34, 35, 36, AND 37 ARE IRRELEVANT AND NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE INFORMATION.**

X-Ray seeks to compel better answers to its requests for admission numbers 14, 31, 33, 34, 35, 36, and 37. (Doc. 46 at 12-14). However, each of these requests relate to information regarding the debt, which bears no relevance to this action. (See Doc. 46 at 12-14). X-Ray seeks to determine whether Plaintiff owes the alleged debt, whether Plaintiff received treatment creating the alleged debt, and the balance of the alleged debt. (Doc. 46 at 12-14). Despite X-Ray's objections, the Court adopted the Magistrate Judge's report and recommendation dismissing X-Ray's counterclaims on September 14, 2012. (Doc. 44). Thus, X-Ray's requests are irrelevant.

Further, the information sought by X-Ray bears no relevance to Plaintiff's TDCA and DTPA claims, as no factual dispute exists regarding whether the alleged debt is a "consumer debt" as defined by the TDCA. (See Doc. 47 § IX(B)). Even in its motion for summary judgment, X-Ray does not dispute that the alleged obligation is a "consumer debt." (See Doc. 49). In fact, X-Ray raises no issues regarding the alleged debt in its motion for summary judgment. (See Doc. 49). Thus, the above referenced requests for admission are neither relevant nor likely to lead to the discovery of admissible information. X-Ray's motion must be denied.

## X. PLAINTIFF'S HAS PROPERLY ANSWERED X-RAY'S INTERROGATORY NUMBERS 6, 7, 8, AND 11.

X-Ray moves to compel better answers to interrogatory numbers 6, 7, 8, and 11. (Doc. 46 at 4-5). On October 2, 2012, Plaintiff amended his answers to these interrogatories. (See Exhibit A). As requested, Plaintiff's amended answers specify the documents responsive to the requests. (See Exhibit A). Thus, Plaintiff has properly answered the identified interrogatories.

While X-Ray also asserts that Plaintiff's answers provide "no description as to how anything reflects why X-Ray should be held vicariously liable for the alleged actions of AHF," such information exceeds the scope of X-Ray's interrogatories. (See Doc. 46 at 4-5; Exhibit A). Each interrogatory asks Plaintiff to identify items in his possession but makes no request that Plaintiff identify how such documents support any claims. (See Doc. 46 at 4-5; Exhibit A). To the extent that X-Ray makes any such request, Plaintiff would not be required to respond because the request calls for a legal conclusion. *See United States v. Southers*, 583 F.2d 1302 (5th Cir. 1978). Therefore, X-Ray's motion lacks merit and must be denied.

WHEREFORE, Plaintiff respectfully requests the Court deny X-Ray's motion to compel discovery.

Dated: October 4, 2012                                    Respectfully submitted,

By: /s/ Noah D. Radbil
Noah D. Radbil
Texas Bar No. 24071015
WEISBERG & MEYERS, LLC
Two Allen Center, 1200 Smith Street
Sixteenth Floor
Houston, TX 77002
Telephone: (888) 595-9111
Facsimile: (866) 565-1327
Email: noah.radbil@attorneysforconsumers.com

Attorneys for Plaintiff THOMAS E. WHATLEY, III

## CERTIFICATE OF SERVICE

On October 4, 2012, a true and correct copy of the above and foregoing document was filed using the Court's EM/ECF system which automatically provided notice of filing to all counsel of record. As a courtesy, copies of equal date have been emailed to the following:

Robbie Malone
Robbie Malone, PLLC
8750 North Central Expressway #1850
Dallas TX 75231

By: /s/ Noah D. Radbil
Noah D. Radbil