# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| THOMAS E. WHATLEY, III § | |
| § | |
| v. § | Case No. 4:11-CV-488 |
| § | Judge Clark/Judge Mazzant |
| AHF FINANCIAL SERVICES, LLC, § | |
| ALPHINE H. FREEMAN III, AND § | |
| X-RAY ASSOCIATES OF NEW § | |
| MEXICO, PC § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Plaintiff Thomas E. Whatley's Motion for Summary Judgment (Dkt. #47) and Defendants AHF Financial Services, LLC and Alphine H. Freeman, III's Motion for Summary Judgment (Dkt. #48). Having considered the relevant pleadings, the Court recommends Plaintiff Thomas E. Whatley's Motion for Summary Judgment (Dkt. #47) be denied, and Defendants AHF Financial Services, LLC and Alphine H. Freeman, III's Motion for Summary Judgment (Dkt. #48) be granted.

### BACKGROUND

On March 19, 2010, Plaintiff was bucked from his horse and was transported by ambulance to Gerald Champion Regional Medical Center (Dkt. #47 at 2-3). On this date, Plaintiff received medical services from Defendant X-Ray Associates of New Mexico ("X-Ray")[1], which created the underlying debt (Dkt. #47 at 3; Dkt. #48 at 1). Plaintiff asserts that the debt was assigned to Defendant AHF Financial Services, LLC ("AHF") for collection after the

---

[1] In two prior Reports and Recommendations, this Court recommended dismissal of all claims against X-Ray. The parties made no objections to that portion of the recommendation.

debt was in default; however, AHF contends that the debt was assigned to it under an "early out" program previously established with X-Ray and that the debt was not in default at the time the debt was assigned (Dkt. #47 at 4; Dkt. #48 at 1). On August 26, 2010, AHF mailed written correspondence to Plaintiff in connection with its efforts to collect the X-Ray debt. This initial correspondence was printed on X-Ray letterhead and the envelope was printed with the names AHF Financial Services and X-Ray Associates of New Mexico. Plaintiff asserts this was a violation of the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA") and constituted an abusive, misleading, deceptive, or unfair practice on the part of AHF. Plaintiff also contends that Defendant Alphine H. Freeman III ("Freeman") is the President and Owner of AHF and should be held liable for the actions of AHF because he "exercised control over the affairs of AHF's debt collection business" and "was involved in the day-to-day operations of AHF's debt collection business" (Dkt. #47 at 8).

On September 24, 2012, Plaintiff filed his Motion for Summary Judgment (Dkt. #47). AHF and Freeman filed their response on October 12, 2012 (Dkt. #67). Plaintiff filed his reply on October 22, 2012 (Dkt. #76).

On September 24, 2012, Defendants AHF and Freeman filed their Motion for Summary Judgment (Dkt. #48). Plaintiff filed his response on October 11, 2012 (Dkt. #63).

On December 17, 2012, the undersigned entered a Report and Recommendation recommending Plaintiff's motion for summary judgment be denied, and Defendants' AHF and Freeman's motion be granted in part and denied in part. The Court recommended that Plaintiff's claims under the TDCA be dismissed against all Defendants. In addition, the Court recommended that Defendant X-Ray be dismissed from the litigation since all claims against X-

Ray were dismissed.[2] This Report and Recommendation was partially withdrawn on January 23, 2013, as to Plaintiff's motion for summary judgment (Dkt. #47) and Defendants AHF and Freeman's motion for summary judgments (Dkt. #48). In addition, the Court ordered the parties to file supplemental briefs on the issue of whether the debt was in default at the time it was received by AHF.

On January 28, 2013, Defendants AHF and Freeman filed their Amended Supplemental Brief to Motion for Summary Judgment (Dkt. #104). Plaintiff filed his Supplemental Brief Discussing Default Status of Debt on February 1, 2013 (Dkts. #108). On February 4, 2013, Plaintiff filed his reply to Defendants' supplemental brief (Dkt. #109).

## STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

---

[2] All claims asserted against X-Ray under the FDCPA were previously dismissed (See Dkt. #45 and Dkt. #79). The Report and Recommendation recommended dismissal of Plaintiff's remaining claims against X-Ray under the TDCA and DTPA, as well as injunctive relief (Dkt. #85). Although this Report and Recommendation was later partially withdrawn (Dkt. #101), the Court did not withdraw its recommendation that X-Ray should be dismissed from this litigation.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

A. *Plaintiff's Claims Against AHF Under the FDCPA*

Plaintiff alleges violations of the FDCPA, the TDCA, and the Deceptive Trade Practices Act ("DTPA") against AHF (Dkt. #17). Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). There is no dispute that Plaintiff is a consumer under the FDCPA. A "debt collector" is defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). However, the term does not include a person attempting to collect a debt owed to another if it concerns a debt that was not in default at the time it was obtained by such person. 15 U.S.C. § 1692a(6)(iii).

AHF argues that Plaintiff's debt was not in default at the time the debt was assigned from X-Ray, and that it cannot be considered a "debt collector" under the FDCPA. In support of its argument, AHF submitted the affidavit of Alex Bessar ("Bessar"), Vice President of Operations at AHF (*See* Dkt. #67 at Ex. B). In his affidavit, Bessar states that both Bessar and Freeman flew to New Mexico where they participated in a meeting with Samuel Brandt, X-Ray's Chief Financial Officer. *Id*. at ¶ 3. During this meeting the three entered into a "handshake agreement" in which AHF would "perform early out maintenance of X-Ray's accounts receivable." *Id*. at ¶ 4-5. According to Bessar, the early out accounts would be referred to AHF thirty days after service for self-pay accounts and thirty days after insurance payment for insurance accounts. *Id*. at ¶ 6. AHF argues that Plaintiff's account was received under this early out agreement.

Plaintiff argues that this evidence should not be considered as part of the summary judgment record because it was not disclosed during discovery and constitutes inadmissible evidence. Plaintiff argues that in its responses to Plaintiff's requests for admissions, X-Ray admitted that the debt was in default at the time it was assigned to AHF for collection (Dkt. #47-4 at 4). Further, Plaintiff contends that X-Ray identified the Service Agreement between the parties as the agreement to which AHF sought to collect the debt (Dkt. #47-2 at 4). Plaintiff argues that neither X-Ray nor AHF indicated the existence of a "handshake agreement" during discovery. In addition, Plaintiff points out that one of the participants to the alleged agreement, Samuel Brandt, swore under oath, upon his personal knowledge, to the truth and accuracy of X-

5

Ray's interrogatory answer that "all agreements" between the co-defendants constituted only the Service Agreement. Plaintiff contends this belies the existence of any "handshake agreement."

In their supplemental brief, both parties argue that the existence of the "handshake agreement" itself is unnecessary to demonstrate whether the debt was in default or not at the time the debt was assigned to AHF under the Service Agreement between it and X-Ray (*See* Dkt. #104 at 6 ("But the early out agreement is not necessary to show the account was not in default, as whether the early out agreement exists or was applicable to Plaintiff's account is irrelevant to the issue of default"); Dkt. #109 at 2 ("Although the evidence of the alleged "handshake agreement is inadmissible and improper summary judgment evidence, its consideration does not help AHF in the context of the undisputed facts of this case")). Therefore, the Court will not consider the affidavit of Alex Bessar, since the parties agree that the existence of the handshake agreement is irrelevant to the determination of whether the debt was in default at the time of its assignment to AHF.[3]

Defendants contend that AHF is not a debt collector, because it was attempting to collect a debt that was not in default at the time the debt was assigned to it. The parties agree that the debt Plaintiff owed to X-Ray was assigned to AHF on July 12, 2010, and that Plaintiff made partial payments on the debt prior to this assignment. Defendants assert that Plaintiff failed to satisfy his burden to demonstrate that the debt was in default at the time of its assignment. Neither the FDCPA nor the Fifth Circuit have defined what it means for a debt to be in default. Defendants refer the Court to *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82 (2d Cir. 2003) for a discussion of the appropriate definition of default under the FDCPA. In

---

[3] By extension, the Court will not decide whether this agreement was required to be disclosed during the discovery process, or any other arguments of the parties regarding the admissibility of the affidavit of Alex Bessar.

*Alibrandi*, the Second Circuit noted that courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding. 333 F.3d at 87. "Although these judicial decisions and regulations reflect inconsistent periods of time preceding default, they all agree that default does not occur until well after a debt becomes outstanding." *Id*. The Second Circuit reasoned:

> Until Congress ends the statutory silence surrounding the term "default," we conclude that the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests. Once the parties have contractually set the period of delinquency preceding default, it will be a relatively simple matter to determine whether the Act applies.

*Id*. at 87 n.5. Defendants also ask the Court to consider the reasoning of the Federal Trade Commission's de Mayo Staff Opinion Letter dated May 23, 2002, which states, "We believe that, in the absence of a contractual definition or conclusive state or federal law, a creditor's reasonable, written guidelines may be used to determine when an account is 'in default.'" May 23, 2002 Letter to Richard de Mayo, Esq. (available at http://www.ftc.gov/os/statutes/fdcpa/letters/demayo.htm).

Defendants contend that Plaintiff has not satisfied his burden to show, in the absence of a statutory definition, either a contractual definition of default existing between the parties or X-Ray's reasonable, written guidelines for determining when a debt is in default. Defendants argue that Plaintiff has not submitted any evidence of: (1) an agreement between him and X-Ray to show the account was in default; (2) X-Ray's guidelines or policies showing that Plaintiff's debt qualified as a default account; or (3) correspondence from X-Ray to him informing him that his account was in default. Plaintiff argues that his evidence that the debt was in default is X-Ray's response to his Request for Admission, which indicated in the affirmative that the debt was in

7

default at the time it was assigned to AHF.[4] However, this admission is insufficient to show that prior to the filing of this lawsuit, Plaintiff's debt was in default. The Court agrees with Defendants that allowing the account to be considered in default based on one word contained in a response to a Request for Admission would allow X-Ray, and other creditors, to bypass the willful choice of an agreement between debtor and creditor for the debtor to accept the creditor's default terms. This would give creditors discretionary and unilateral power to declare when a debt is in default, which is contrary to the intent and purpose of the FDCPA.

> The express purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors. This purpose would be contravened if a creditor were unilaterally able to determine when and if an account was in default for FDCPA purposes and therefore whether the provisions of the FDCPA applied to the debt collection activities of the collection agency it hires.

*Magee v. AllianceOne, Ltd.,* 487 F. Supp. 2d 1024, 1027-28 (S.D. Ind. 2007). Therefore, the Court finds there is insufficient evidence to support Plaintiff's claim that the debt was in default at the time it was assigned, and this Court is of the opinion that Plaintiff failed to satisfy his burden to show that the debt was in default.

However, Plaintiff contends that even if the debt was not in default when it was assigned to AHF, then AHF is considered a "creditor" as defined by the FDCPA (Dkt. #109 at 2). The FDCPA regulates the activities of debt collectors, and creditors are generally not covered by the Act. *See* 15 U.S.C. § 1692a, 1692f; *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536

---

[4] Plaintiff further argues that he could have delved into the relationship between X-Ray and AHF further at deposition, but Defendants failed to attend a properly noticed deposition. However, further explanation from Defendants reveals that Plaintiff noticed the deposition for a day on which Plaintiff knew Defendants were unavailable for deposition. However, Defendants agreed to conduct depositions on the second day noticed by Plaintiff. On April 11, 2012, counsel for Defendants drove from Beaumont to Houston and appeared at the place where the deposition was noticed. The court reporter set up his equipment, and after Plaintiff's counsel failed to call in to the deposition several minutes after it was scheduled to start, the reporter called Plaintiff's counsel. At that time, Plaintiff's counsel called off the deposition, and Defendants' counsel forwarded him the email in which he confirmed the depositions would occur that day as planned.
As such, there was no improper conduct on the part of Defendants, as implied by Plaintiff's counsel in his brief. Plaintiff had ample opportunity to take depositions on these issues and failed to do so.

(7th Cir. 2003). "For purposes of applying the Act to a particular debt, these two categories – debt collectors and creditors – are mutually exclusive." *Schlosser*, 323 F.3d at 536. "However, for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector." *Id*.

Plaintiff argues that even if the debt was not in default at the time of the assignment to AHF, the statute contains an exception that reads:

> Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debt.

15 U.S.C. § 1692a(6). Plaintiff asserts that because AHF used the name of X-Ray on its correspondence with Plaintiff, it should be considered a debt collector for purposes of the FDCPA.

In the present case, AHF argued that it serviced Plaintiff's account under its business relationship with X-Ray. Defendant explains that X-Ray uses a vendor, AHF, to assist with the billing of patients to whom it provides services, and under this agreement, Plaintiff was simply mailed the statements for his bills with a return envelope for payment. After accepting a payment from Plaintiff, X-Ray informed Plaintiff that further correspondence would be received from the Houston billing office. (Dkt. #104, Appendix at 0030-0034). The statements Plaintiff complains of are those statements sent by AHF on X-Ray Associates letterhead indicating the amount due on the account. At the bottom of the page, the statement indicates:

> Your account has been referred to our office because of the delinquent status and your failure to respond to any previous communication. Our client would like to resolve this issue without resorting to assigning your account to a collection agency or credit bureau… This is an attempt to collect a debt, and all and any information will be used for that purpose. This statement serves as notice under the Federal Fair Debt Collection Practices Act 1.

(Dkt. #104, Appendix at 0048). The envelope included with the statement for payment, as well as the envelope that the statement was mailed in, bears the name of both AHF and X-Ray with a Houston address for payment.

Therefore, the Court must determine if these were the actions of a creditor who, in the process of collecting his own debts, uses any name other than his own, which would indicate that a third person is collecting or attempting to collect such debt. "A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else' or 'uses a pseudonym or alias.'" *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). "Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the name under which it usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Id.* (internal citations omitted). An in-house collection unit will be exempt from the provisions of the FDCPA if it collects its own debts in the true name of the creditor or a name under which it has consistently done business. *Id.* The question that must be addressed is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that the letter at issue was not from AHF, but was from an unrelated third party. *See Goswami v. Am. Collections Enterprise, Inc.,* 377 F.3d 488, 495 (5th Cir. 2004) (a court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard"). "This standard serves the dual


purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). The "least sophisticated consumer" standard protects those consumers on "the very last rung on the sophistication ladder," while the "unsophisticated consumer" protects those "consumers of below average sophistication or intelligence." *Id*.

      The Court finds that under either standard, a consumer would not be deceived into believing the letter was sent from an unrelated third party, rather than from AHF. First, Plaintiff was clearly notified by X-Ray that further communication would be received from its Houston billing office in all capital letters in a stand-out box on the top of the statement received by Plaintiff. Then, such communication was received from the Houston billing office, AHF, which was clearly indicated on the return address on the envelope before Plaintiff opened it. Further, the statement inside uses the name X-Ray, which is the name the creditor used from the inception of the credit relationship. In bold at the bottom of the statement, the letter refers to X-Ray as "our client," states that the letter has not yet been referred to a collection agency or credit bureau, but that the account is delinquent and the statement is an attempt to collect the debt owed. No consumer would be deceived into thinking that an unrelated third party was attempting to collect the debt owed by Plaintiff under the facts of this case. Therefore, the Court finds that AHF is not a debt collector for purposes of the FDCPA, because (1) Plaintiff failed to provide evidence that the debt was in default at the time it was obtained by AHF, and (2) AHF does not meet the exception for creditors using a false name to collect the creditor's own debt. For these reasons, the Court finds that the FDCPA does not apply to AHF under the facts of this

case because Plaintiff has not satisfied his burden to show that AHF is a debt collector as defined by the FDCPA. For this reason the Court recommends Plaintiff's motion for summary judgment be denied.

Further, the Court finds that Defendants have satisfied their summary judgment burden to show that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. *See Anderson,* 477 U.S. at 247. As stated above, if Plaintiff, the nonmovant, bears the burden of proof on an issue, Defendants may discharge their burden by showing that there is an absence of evidence to support Plaintiff's case. *Celotex*, 477 U.S. at 325; *Byers,* 209 F.3d at 424. The Court finds that Defendants satisfied their burden to show that there is an absence of evidence to support Plaintiff's argument that AHF is a debt collector as defined by the FDCPA. Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The Court finds that Plaintiff has not set forth particular facts indicating that there is a genuine issue for trial. Therefore, the Court recommends that Defendants' motion for summary judgment be granted, and further recommends that Plaintiff's claims against AHF arising under the FDCPA be dismissed.

### B. *Plaintiff's Claims Against AHF Under the TDCA*

Unlike the FDCPA, the TDCA contains a broader definition of "debt collector," which "means a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6). Under this definition it is undisputed that AHF meets the definition of "debt collector." Plaintiff argues that he is entitled to summary judgment under the TDCA at Section 392.304(a)(19), which prohibits a debt collector from using "any other false representation or

deceptive means to collect a debt or obtain information concerning a consumer." Plaintiff argues that AHF (1) falsely used X-Ray's name; (2) falsely implied that X-Ray was not Plaintiff's creditor; and (3) threatened Plaintiff with imminent assignment of his alleged debt which had already been assigned to AHF prior to the communication by letter (Dkt. #47 at 21-22). Plaintiff also argues that he is entitled to summary judgment under the TDCA at Section 392.304(a)(6), which prohibits a debt collector from "using a written communication that fails to indicate clearly the name of the debt collector and the debt collector's street address or post office box and telephone number if the written notice refers to a delinquent consumer debt."

Defendants argue that they are entitled to summary judgment on Plaintiff's claims under the TDCA because Plaintiff cannot prove actual damages. Plaintiff argues that an award of actual damages is a question for the jury and may be based solely on the testimony of Plaintiff at trial. The only proof of actual damages offered by Plaintiff is contained in his affidavit, as follows:

> 17. AHF's false threat worried me greatly because I didn't have the money to pay X-Ray for the alleged debt and, despite my requests for information from X-Ray & Associates of New Mexico, P.C., it wasn't clear to me that I actually owed the debt or that any of the services were actually necessary. The failure of X-Ray & Associates of New Mexico, P.C., to send my test results with me caused me to incur additional payment obligations because of unnecessary retesting and the hospital I was transferred to next. This ultimately resulted in a CT Scan bill in the amount of $17,607 from University Medical Center of El Paso.
>
> 18. AHF Financial Services, LLC's false use of X-Ray & Associates of New Mexico, P.C.'s name to collect an alleged debt from me – through threats that X-Ray & Associates of New Mexico, P.C., would assign my debt to a collection agency, when in fact AHF Financial Services, LLC, was the collection agency to which my alleged debt had already been assigned – caused me to suffer significant stress and as a direct result I had difficulty sleeping on several nights because I didn't have the money to pay and was worried about what would happen if my debt was assigned to a collection agency. I was aggravated, intimidated, and suffered legitimate mental anguish as a result. I have this huge and mostly unexplained huge bill for a CT Scan from University Medical Center

13

>of El Paso that I still today have to deal with. When I discovered that I'd been deceived and that all my worry was for nothing, I felt even worse and more embarrassed.[5]

(Dkt. #68 at 3). These statements suggest that Plaintiff may have suffered actual damages as a result of his inability to pay his debts, and AHF's attempt to collect the debts. Plaintiff also suggests that he suffered actual damages as a result of failing to obtain a satisfactory explanation of the charges, and the enormity of the debts he sustained as a result of his accident.

However, these statements do not reveal Plaintiff suffered actual damages as a result of the failure of AHF to include its name and the street address on the letter, or as a result of his confusion regarding which entity was contacting him in an attempt to collect the debt. *See Elston v. Resolution Services, Inc.,* 950 S.W.2d 180, 184-85 (Tex. App. – Austin, 1997, no writ). Plaintiff alleges various injuries, but fails to link them to the actual violations of which he complains. The TDCA requires this link because it provides a cause of action for "actual damages sustained as a result of a violation of this chapter." *Id.* at 185. Further, Plaintiff also has other creditors as a result of the medical services received on this same date and has made no effort to differentiate the damages suffered as a result of the actions of AHF, Freeman, or X-Ray as opposed to these other creditors. For these reasons, the Court recommends that Plaintiff's motion for summary judgment on his claims arising under the TDCA against Defendants be denied, and Defendants' motions for summary judgment be granted on these claims. The Court further recommends that Plaintiff's claims arising under the TDCA and Deceptive Trade Practices Act for actual damages be dismissed as to all Defendants.[6]

---

[5] X-Ray objects to these statements as conclusory statements, legal conclusions, and speculation. These objections are OVERRULED.

[6] Plaintiff's claims under the DTPA arise solely from his claims under the TDCA, and since those claims fail, the DTPA claims fail as well.

Plaintiff also asks for injunctive relief under the TDCA. "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.* Plaintiff does not attempt to satisfy these requirements for injunctive relief, and the Court finds that Plaintiff cannot prove a probable right to the relief sought nor a probable, imminent, and irreparable injury in the interim. Therefore, the Court recommends that Plaintiff's claims for injunctive relief be dismissed.

*C. Plaintiff's Claims Against Freeman*

Defendant Freeman moves for summary judgment on the basis that Plaintiff failed to show that a claim for separate liability exists against Freeman. Defendant argues that Freeman cannot be held personally liable for violations of the FDCPA or TDCA unless some basis is shown for piercing the corporate veil (Dkt. #48 at 4-5). The Fifth Circuit has not directly addressed the issue of whether an employee of a debt collector can be held personally liable for violations of the FDCPA. However, the Fifth Circuit has addressed the question of whether an employee can be considered a "debt collector" under the FDCPA. *See Hester v. Graham, Bright & Smith, P.C.,* 289 F. App'x 35, 40 (5th Cir. 2008). In *Hester*, the Fifth Circuit found that the statute contains two types of debt collectors, those who collect debts as their "principal purpose" and those who do so "regularly." *Id.* at 41. The Fifth Circuit determined that the defendant attorney in *Hester* was a debt collector under the FDCPA because he engaged in enough debt-collection activities to be a "regular" debt collector. *Id.*

15

Defendants argue that in *Hester,* the Fifth Circuit specifically identified the defendant as an attorney and directly linked liability to that fact and the attorney's use of litigation in attempting to collect a debt. Defendants contend that because Freeman is not an attorney and did not use litigation in an attempt to collect a debt, he cannot be individually liable under the FDCPA unless plaintiff shows specific facts necessary to support piercing the corporate veil.

Defendants do not argue that Freeman is not a debt collector, but only argue that the Fifth Circuit's holding in *Hester* does not apply to Freeman. The Court recognizes that Freeman is not an attorney; however, the Court finds the Fifth Circuit's reasoning in *Hester* persuasive. The Court finds that Freeman is a person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). Further, the Court finds that Freeman is a person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. Therefore, Freeman could be considered a "debt collector" for purposes of the statute. In *Hester*, the Fifth Circuit suggests that persons found to be "debt collectors" may be held liable under the FDCPA. *Hester*, 289 F. App'x at 40 (stating, "Because the venue requirements of the FDCPA… only apply to debt collectors, the defendants must be considered debt collectors in order to be held liable for violating the statute.").

However, regardless of whether Freeman is a "debt collector" for purposes of the FDCPA,[7] Defendants also argue that Plaintiff failed to set forth any allegations or evidence that Freeman was personally involved with Plaintiff's account. For example, Plaintiff makes no allegations that Freeman sent correspondence to Plaintiff himself, or specifically ordered that

---

[7] Freeman is not a debt collector for purposes of the FDCPA for the same reason that AHF is not considered a debt collector under the FDCPA.

16

correspondence be sent to Plaintiff. Plaintiff only alleges that Freeman oversaw the daily operations of AHF. In addition, Plaintiff fails to support these allegations with any evidence of Freeman's debt collection activities. Therefore, the Court finds that Plaintiff failed to state any reason to hold Freeman individually liable for his personal debt collection activities, and the Court recommends Plaintiff's claims under the FDCPA and TDCA against Freeman be dismissed.

## CONCLUSION AND RECOMMENDATION

In conclusion, the Court RECOMMENDS that Plaintiff Thomas E. Whatley's Motion for Summary Judgment (Dkt. #47) be **DENIED**. The Court further RECOMMENDS that Defendants AHF Financial Services, LLC and Alphine H. Freeman, III's Motion for Summary Judgment (Dkt. #48) be **GRANTED**.

The Court recommends that Plaintiff's claims under the FDCPA be dismissed against Freeman, because Plaintiff fails to sufficiently allege that Freeman violated the FDCPA. In addition, the Court recommends that Plaintiff's claims under the FDCPA be dismissed against AHF, because AHF is not a debt collector for purposes of the FDCPA.

The Court further recommends that Plaintiff's claims for actual damages under the TDCA be dismissed as to all Defendants because Plaintiff is unable to provide sufficient evidence of actual damages as required by the statute.

The Court further recommends that Plaintiff's claim under the DTPA and for injunctive relief under the TDCA be dismissed as to all Defendants. Therefore, the Court recommends that all Defendants be dismissed from this litigation, and that final judgment be entered in favor of Defendants.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 8th day of February, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE